### WILLIAM H. PLACE *et al. vs.* THE CITY OF PROVIDENCE *et als.*

A bill in equity charged the respondents with making a purchase of real estate for certain
improper purposes. The answer denied these purposes, and gave other and proper pur-
poses as those of the respondents, but only gave them generally :

*Held,* on exception, that the purposes given in the answer should be specifically set forth,
and with an averment that they were not only the real but the sole purposes of the re-
spondents.

Answers in equity must not be evasive, but must either deny, or confess and avoid the
charges of the bill.

Courts of equity have jurisdiction to prevent a municipal corporation from abusing its
powers.

A municipal corporation will not be allowed to purchase realty in order by controlling it
to compel a tax-payer to abandon or compromise his litigation with the municipality.

Extrinsic evidence may be used to show the true objects of municipal action.

BILL IN EQUITY to set aside a conveyance of certain realty to
the city of Providence.

The bill was filed February 3, 1872, after the decision of the
court in *Lewis* v. *City of Providence,* 10 R. I. 97. It was
brought by several tax-payers of the city of Providence against
the city of Providence, Thomas A. Doyle, who was mayor,
and Messrs. Angell, Coggeshall, Earle, Spicer, Spencer, Sprague,
Snow, Brayton, and Daboll, who were members of the board of
aldermen, and charged that Doyle, as trustee, and the other
respondents, being seised of lots Nos. 12 and 13 on the plat of
the Dorrance Street Association, see plat in 9 R. I. between
pages 460 and 461, a resolution was adopted by the city council
January 8, 1872, as follows :

"*Resolved,* That whereas, in the opinion of the city council
and in the exercise of their powers under the charter of the city
of Providence, it has become for the interest of the city, in its
highway department and for other municipal uses, to purchase,
own, and make use of the real estate referred to in the proposi-
tions in writing to sell the same made to the city council this

day by Thomas A. Doyle, for himself and certain associates, this city council hereby accepts such offer on the part of the city of Providence at its terms as contained in said written proposition ; and that the city treasurer be, and he hereby is, authorized to pay to said Thomas A. Doyle the sum fixed in said proposition upon the tender to said treasurer of a deed of said real estate by said Thomas A. Doyle, approved by the city solicitor, and that the amount so paid be charged to the loan account."

The bill asserted the invalidity of this resolution, prayed that the deed of these lots to the city might be set aside, that Doyle and his respondent associates might be required to refund the purchase-moneys, and that the city might be enjoined from any further expenditure on said lots.   The bill also charged that the real object of the transaction was to " enable the city, by thereby becoming a part owner in said Dorrance Street Association wharf property, to harass said Henry C. Clark," one of the complainants, " in his use of the portion of said property and estate owned and leased by him, and thereby compel him to either abandon or settle on such terms as the city or its officers might dictate the just claims he has upon said city, as established by the judgment of this honorable court, for damages sustained by him by reason of said city emptying its sewers into the dock and public waters adjacent to said wharf, and for the recovery of which he has his actions at law now pending against said city ; " see in illustration of these actions *Clark* v. *Peckham, City Treasurer,* 9 R. I. 455, 466 ; 10 R. I. 35, 36 ; *Clark* v. *City of Providence,* 10 R. I. 437, 442 ; " and that said city now has and owns ample wharf accommodations for all its wharf business far better located upon the harbor," &c., &c.   The bill closed with the following interrogatories :

" 1. Whether the real, original, primary, and principal, if not sole, purpose of the contemplated purchase of said lots was not to force said Henry C. Clark either to an abandonment or compromise, or to thwart him in the prosecution of his claims aforesaid against said city ?

" 2. Whether the chief, if not the only, purpose of said pretended resolution of January 8, was not in furtherance of this same purpose ?

" 3. Whether the insertion into said pretended resolution of

January 8, that such purchase was made for highway purposes, was not for the purpose of evading the injunction aforesaid of this honorable court, or what was understood to be the decision of the court ? [1]

" 4. Whether had it not been for the purpose aforesaid, relating to the affairs of said Clark, said lots or either of them would have been purchased ?

" 5. Whether the city has any real need of said lots or either of them for highway or any other, and if any, what other public or municipal purpose ?

" 6. Whether at the time of the pretended purchase of said lots there was any real and *bonâ fide* intention of using said lots for highway purposes ?

" 7. Whether it is not now the intention of said city and of its officers, or some of them, and their, the respondent's, intention to use said purchase, if allowed to stand, and the city's interest thereunder in said wharf property, to interfere with said Clark in the use of the portion of the said property held by him, and to force him to an abandonment or compromise of his claims aforesaid against the city."

The articles of the Dorrance Street Association are printed in 9 R. I. 457.

The complainants excepted to the answers.

*July* 15, 1876. MATTESON, J. The first and third exceptions to the answer of the defendants Doyle, Angell, Coggeshall, Earle, Spicer, Brayton, Daboll, Sprague, and the City of Providence, are overruled.

The second exception to the answer of the defendants named is sustained.

The answer denies that the real purpose of the purchase of the lots was, as charged in the bill, to enable said city to harass the complainant, Clark, in his use of the portion of the Dorrance Street Association Wharf owned and leased by him, and thereby compel him to either abandon or settle the claims which he had upon said city, by reason of its emptying its sewers into the dock and public waters adjacent to said wharf, and avers that the real purpose of the purchase was the use of said lots in

---

[1] *Lewis v. City of Providence*, 10 R. I. 97, 98.

connection with the highway department, and for other public purposes.

We think the answer should set forth specifically what were the other public or municipal uses for which the lots were purchased, and should also aver that the purposes mentioned in the answer were not only the *real* but the *sole* purposes of the purchase.

The first exception to the answer of the defendants, Snow and Spencer, is overruled, as is also so much of the second as relates to the answer to the fourth interrogatory. The residue of the second exception, namely, those portions relating to the answers to the first, second, third, and seventh interrogatories, is sustained.

Instead of confessing or denying that the purpose of the purchase was as charged in the first interrogatory, these defendants set forth the purposes which they allege to have been the purpose of the purchase. Instead of confessing or denying that the chief or only purpose of the resolution of January 8 was in furtherance of the purpose mentioned in the first interrogatory, as charged in the second interrogatory, they state that the resolution was in furtherance of the objects named in their reply to the first interrogatory. Instead of confessing or denying that the insertion in the resolution of January 8, that such purchase was made for highway purposes, was for the purpose of evading the injunction or avoiding what was understood to be the decision of the court, as charged in the third interrogatory, they answer that the understanding in relation to the reason the injunction against the first purchase was granted was because the public uses for which the property was purchased were not set forth in the resolution, and that it was to meet that objection that the resolution of January 8 was passed. Instead of confessing or denying the intention to use the lots as charged in the seventh interrogatory, they refer for their answer to it to their answer to the first interrogatory.

The defendants should have answered their interrogatories directly, confessing or traversing the substance of the charges contained in each. This they have not done. They do not admit the charges, but allege new matters, which negative the charges only by implication.                  *Decree accordingly.*

After the foregoing opinion amended answers were filed, and the cause came on to be heard October 3 and 4, 1877.

*July* 27, 1878.   POTTER, J.   This case was heard upon bill and the amended answers and oral evidence.

The power of a court of chancery to control a municipal corporation in order to prevent any abuse of its powers or any perversion of its funds is too well established to admit of any doubt, and that the application for its exercise may be made by taxpayers, as well as by the English practice of an information by the Attorney General, is also well supported by authority. That the power should be cautiously exercised need hardly be observed; but the existence of the jurisdiction may be very necessary to protect the rights of a minority of tax-payers against the illegal acts of a majority.

And the power to compel the parties to repay the money and to restore the former condition of things is as essential as the power to enjoin an appropriation or payment of money, otherwise the corporation, by speedy action and payment, might anticipate and defeat the relief to which the complainants are entitled.

And it is also well settled that the parties may resort to evidence *ab extra* to show the true object and intent of the municipal action.

And from the answers and the oral evidence it is well established that the purchase was not for any of those purposes for which the city may lawfully purchase, but was primarily, if not solely, for the purpose of enabling the city to obtain a control of certain property, and to make use of it in settling a lawsuit with one of its citizens.

Another point was made by the counsel for the complainants, that as the city made the purchase from the aldermen, they were judges in their own case of the price they were to have; and that by analogy to the case of a trustee the purchase should be set aside. But it is not now necessary to decide that question.

We think we ought to say that there is in the present case no charge or ground of suspicion of any personal dishonesty, or that any members of the city government have in any way whatever made any personal profit out of the transaction.   See *Attorney General* v. *Aspinall*, 1 Keen, 513; 2 Myl. & C. 613; *Attorney*

*General* v. *Wilson*, 9 Sim. 30, 526 ; 1 Craig & Ph. 1, and cases cited in Dillon on Municip. Corp. §§ 730–736.

We think, therefore, relief should be granted.